**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**AMNA GRAGG**                                                     **PLAINTIFF**

**v.**                                       **CIVIL ACTION NO.:** 3:24-CV-008-GHD-JMV

**C.K. CONSTRUCTION LLC**                                          **DEFENDANT**

**COMPLAINT
<u>JURY TRIAL DEMANDED</u>**

**COMES NOW** the Plaintiff, Amna Gragg, by and through counsel, Watson & Norris, PLLC, and files this action to recover damages for violations of her rights under Title VII of the Civil Rights Act of 1964 for retaliation and sexual harassment against Defendant, C.K. Construction LLC.  In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

**<u>THE PARTIES</u>**

1.      Plaintiff, Amna Gragg, is an adult female who resides in Tate County, Mississippi.

2.      Defendant, C.K. Construction LLC, can be served with process by serving its registered agent, Leigh Ann Darby, 216 South Ward Street, Senatobia, Mississippi 38668.

**<u>JURISDICTION AND VENUE</u>**

3.      This Court has federal question and civil rights jurisdiction for a cause of action arising under Title VII of the Civil Rights Act of 1964, as amended.

4.      This Court has subject matter and personal jurisdiction over the Defendant and venue is proper in this Court.

5.      Plaintiff timely filed her Charge of Discrimination with the EEOC, on

1

August 29, 2022, a true and correct copy of which is attached as Exhibit "A." The EEOC issued a Notice of Right to Sue on November 20, 2023, a true and correct copy of which is attached as Exhibit "B." Plaintiff timely files this cause of action within ninety (90) days of receipt of her Notice of Right to Sue.

## STATEMENT OF FACTS

6.      Plaintiff is a 32-year-old female resident of Tate County, Mississippi.

7.      Plaintiff was hired on January 15, 2022, in various roles (i.e., Human Resources Representative, Finance Manager, Recruiter, etc.) at C.K. Construction LLC (CKC).

8.      During the first week of her employment, Owner Carl Kopf repeatedly made unwanted sexual advances toward Plaintiff, touching her back and on her shoulders while she was trying to show him things on the computer.

9.      Plaintiff responded by telling Mr. Kopf that she was married, and his advances made her feel uncomfortable.

10.     From the beginning of her employment, no written contract or set hourly rate or salary was agreed upon by Mr. Kopf and Plaintiff for her pay.

11.     Rather, at the end of each work week, Mr. Kopf typically just told Plaintiff to pay herself (i.e., since she oversaw payroll) a certain amount, and each week she complied.

12.     By mid-March 2022, despite her complaints, Mr. Kopf's sexual advances continued.

13.     So, Plaintiff again stated that she was married, and she did not want to jeopardize her marriage.

2

14. As time went by, since Plaintiff had rejected his sexual advances, Mr. Kopf began to retaliate against her.

15. Mr. Kopf claimed that Plaintiff was trying to frame or exploit him, and he accused her of things for which she was not responsible.

16. On June 6, 2022, Mr. Kopf instructed Plaintiff to return his vehicle, which he had insisted on loaning to her.

17. Plaintiff arrived at his home and began to unload her belongings from the vehicle.

18. Suddenly, Plaintiff heard Mr. Kopf screaming for her to come look at something from inside his house.

19. Plaintiff was concerned that there was something wrong.

20. When Plaintiff walked into the house, however, Mr. Kopf had pornography showing on his television and he tried to persuade Plaintiff to watch it with him.

21. Feeling sexually harassed, violated, and very awkward, Plaintiff withdrew from the home.

22. After that incident, in retaliation for Plaintiff's refusal to give in to his sexual advances, Mr. Kopf laid her off.

23. On August 29, 2022, Plaintiff filed an EEOC Charge of sex discrimination/harassment and retaliation against CKC.

24. In June 2023, in response to Plaintiff's Charge, CKC submitted a Position Statement to the EEOC.

25. CKC's Position Statement alleges that Plaintiff was hired "on a temporary basis".

3

26. Plaintiff contends this allegation is false and it was never indicated to her in any way that her employment was to be temporary.

27. CKC's Position Statement alleges that Plaintiff requested to be paid as a 1099 contractor and that Plaintiff "is not a U.S. citizen and does not have a social security number."

28. Plaintiff concedes that she was paid as a 1099 contractor, although this was Mr. Kopf's decision, not hers.

29. Plaintiff contends the other allegations are patently false.

30. Plaintiff is a U.S. citizen, and she has a social security number.

31. CKC's Position Statement alleges that, "Kopf's suspicions about Plaintiff began fairly early during her employment when she applied for an American Express card for CKC without asking him. She also linked the AmEx card to CKC's Amazon account and set it up so that it paid for each order immediately after it was made."

32. Plaintiff contends that these allegations are false.

33. Mr. Kopf instructed her to apply for the American Express credit card because he said he was having problems with his Capital One credit card.

34. Notably, Mr. Kopf disclosed to Plaintiff that his girlfriend in Alabama was an authorized user of the Capital One card and she was putting charges on it without notifying him.

35. Plaintiff warned Mr. Kopf that his girlfriend should not be an authorized user on the card since it was a business account, but he disregarded this advice.

36. Instead, he instructed her to apply for the American Express Card.

37. Plaintiff further contends that the American Express card offer was made

4

through CKC's Amazon account.

38.    In other words, it was part of the card offer that the account would be automatically linked to the business's Amazon account.

39.    Thus, this was not something that Plaintiff played any part in deciding; rather, it was part of the American Express offer that Mr. Kopf instructed Plaintiff to apply for.

40.    CKC's Position Statement alleges, "[Plaintiff] was ordering many unnecessary and unneeded items for the office without permission, and Kopf had to cancel many orders."

41.    Plaintiff's role was to manage the supplies of the office.

42.    For that reason, she ordered supplies as was appropriate to her position and to the needs of the company.

43.    Mr. Kopf instructed Plaintiff to order whatever was needed, and he never indicated that she was ordering unnecessary or unneeded items.

44.    No orders were ever cancelled during her time of employment at CKC.

45.    CKC's Position Statement alleges that "CKC's Capital One credit card was "compromised" on multiple occasions…Kopf noticed several charges that he did not recognize, including a charge to Frontier Airlines (he later found out Plaintiff had paid for plane tickets for her parents, one of which she charged to the Capital One card and another directly from CKC's bank account…He had to have CKC's Capital One card reissued several times because of these questionable charges."

46.    These allegations are false.

47.    When Mr. Kopf hired Plaintiff, he disclosed to her that his wife had left him

and had gone to California, and that they were in the process of divorcing.

48. Mr. Kopf further disclosed to Plaintiff that he believed his soon-to-be ex-wife was using his credit cards to purchase items without his consent or knowledge.

49. Plaintiff assisted Mr. Kopf with replacing his credit cards, back accounts, and passwords.

50. Plaintiff even assisted Mr. Kopf with making changes to his life insurance policy, which had previously been in his wife's name instead of his children's names.

51. When Plaintiff first became employed at CKC company there were multiple charges on his credit cards that were made without his consent or knowledge.

52. For this reason, Plaintiff helped Mr. Kopf order replacement cards at least twice.

53. At one point, Mr. Kopf had to fly to California to attend a court hearing related to his divorce.

54. While there, Mr. Kopf phoned Plaintiff and stated he had been called and notified that one of his credit cards was declined due to someone making unauthorized charges with it.

55. Plaintiff assisted Mr. Kopf in obtaining a replacement credit card and she filed disputes on his behalf for the unauthorized charges.

56. Unauthorized charges were made to Mr. Kopf's Capital One card by Makayla Sloan (21-year-old female).

57. Mr. Kopf disclosed to Plaintiff that he met Ms. Sloan in Alabama at a Hooter's restaurant.

58. Plaintiff contends that Mr. Sloan paid for Ms. Sloan to have breast

enhancement surgery and he insisted on showing Plaintiff a picture of Ms. Sloan naked.

59. Mr. Kopf insisted on allowing Ms. Sloan to be an authorized user on his Capital One business credit card, despite Plaintiff's encouragement to the contrary.

60. When Plaintiff expressed concern about Ms. Sloan's inappropriate spending with his Capital One credit card, Mr. Kopf responded, "My annual income is a million to 2 million…I don't care about what she is doing with my money".

61. CKC's Position Statement alleges that Mr. Kopf "saw a charge for approximately $2,275 to Home Depot on CKC's AmEx card. He instructed Plaintiff to dispute the charge. As she was chatting with an AmEx representative, Kopf could monitor the conversation on his phone. He saw Plaintiff tell the representative not to dispute the $2,275 charge. Kopf went to Home Depot the next day, and his suspicions were confirmed. Plaintiff had ordered a washer and dryer on the company's AmEx and had it shipped to her home…Kopf immediately confronted Plaintiff about this charge and told her it was stealing and unacceptable. However, because he had gotten his money back from AmEx, he decided to give her one more chance."

62. This allegation is patently false.

63. Plaintiff never purchased any personal items using Mr. Kopf's credit cards.

64. Moreover, when unauthorized charges were made on his credit cards, as explained above, Plaintiff consistently helped Mr. Kopf to fix the problems.

65. CKC's Position Statement alleges that "Plaintiff ordered approximately $5,200 in some sort of Microsoft products that were not authorized or needed by Kopf…After seeing these invoices, Kopf fired Plaintiff. He fired her on or about June 13, 2022."

7

66. Mr. Kopf gave permission for all the Microsoft products that Plaintiff used.

67. Mr. Kopf wanted his company to be tech savvy, so these products were merely her efforts to comply with his direction, and he was fully aware of them.

68. Plaintiff showed Kopf all the Microsoft products, and he gave her full permission.

69. After Plaintiff was terminated, however, she is unable to address what Microsoft programs Mr. Kopf may have added.

70. The products Plaintiff purchased cost the company $150-200 per month, and this was known to and approved by Mr. Kopf.

71. Plaintiff has no awareness of any charge of $5200 by Microsoft.

72. Plaintiff maintains that her termination had nothing to do with Microsoft products.

73. She contends that on June 6, 2022, the day in which Mr. Kopf had pornography playing on his TV, was her last day of actual work.

74. Neither on that day nor any day after that was there ever any discussion of any Microsoft products or was that given as an alleged reason for her termination.

75. CKC's Position Statement alleges that "Kopf, with the help of his wife, looked through the payroll on ADP and discovered how much Plaintiff had overpaid herself during her brief employment. At $750.00 per week, her total pay from March 2022 to mid-June 2022 should have been approximately $9,000. However, Plaintiff paid herself almost $33,000 during that period…She would pay her LLC her weekly wage, but then would also make additional, unauthorized payments to her LLC in various amounts."

8

76. Some days she worked 18-hour days without a break.

77. Each day, Plaintiff told Mr. Kopf how much she had worked, and he instructed her to pay herself using the payroll software (ADP).

78. Typically, because of her long hours, Plaintiff earned $2500-3500 per week.

80. CKC's Position Statement alleges that "Plaintiff's fraud did not stop even after she was fired. Kopf and his wife noticed one additional withdrawal of $4,800 marked as "payroll" on CKC's bank statement in July 2022…Unbeknownst to Kopf, Plaintiff had used the ADP software to link CKC's bank account to a fictitious business in her husband's name…So Plaintiff continued to access the ADP program and pay herself (via a fictitious business under her husband's name) even after she was fired."

81. Plaintiff contends that as part of setting up CKC to use the payroll software (ADP), she set it up so that payments were auto drafted and paid out to employees on paydays.

82. After June 6, 2023, Plaintiff's last day of work, no one at CKC contacted ADP to stop the auto draft.

83. Plaintiff contends the allegation that she "used the ADP software to link CKC's bank account to a fictitious business in her husband's name" is very creative, but patently false.

84. Plaintiff contends that if $4800 was withdrawn in July 2022, then someone may have been fraudulently withdrawing money from Mr. Kopf, but it was not her.

85. CKC's Position Statement alleges that "Plaintiff committed credit card fraud and paid herself in violation of her contract during her employment at CKC. Kopf

9

has turned all of the aforementioned information over to the Tate County Sheriff's Office…First, on June 18, 2022, Kopf made charges of credit card fraud…Significantly, in the deputy's narrative, he specifically noted that Mr. Gragg told him that Plaintiff had obtained credit cards in her mother's name and had also made purchases with an AmEx card belonging to CKC…The narrative also notes that Plaintiff had told Kopf she would file sexual harassment charges against him if he reported her fraudulent credit card use to the authorities…Kopf followed up the charges of credit card fraud with charges of embezzlement on July 28, 2022…Kopf informed law enforcement about how much Plaintiff had overpaid herself during her employment, as well as the additional attempts to steal more money after she was fired…Again, the deputy's narrative notes that Plaintiff threatened Kopf with sexual harassment charges and "a lawyer to make his life hard" if he pressed charges…Importantly, these charges were made by Kopf in June and July 2022.  Plaintiff then followed up with her threats to "make Kopf's life hard" with this bogus EEOC charge in August 2022."

86.     These outlandish allegations are patently false.

87.     Plaintiff has at no point been approached or contacted by any law enforcement regarding these alleged charges of fraud.

88.     Plaintiff categorically denies that she ever defrauded Mr. Kopf or overpaid herself in any way.

89.     Rather, Plaintiff did everything in her power to address and correct Mr. Kopf's clearly reckless financial decisions.

90.     Moreover, rather than showing gratitude for her hard work, Mr. Kopf sexually harassed Plaintiff relentlessly and retaliated against her when she rebuffed

10

him.

## CAUSES OF ACTION

### COUNT I:  VIOLATION OF TITLE VII – RETALIATION

91.     Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 90 above as if fully incorporated herein.

92.     Defendant has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.,* by retaliating against Plaintiff for engaging in protected activity as described in more detail above.  Plaintiff is entitled to protection against retaliation by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq*.

93.     The acts of the Defendant constitute a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*., and entitle Plaintiff to recovery of damages pursuant to Title VII.

### COUNT II:  VIOLATION OF TITLE VII – SEXUAL HARASSMENT

94.     Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 93 above as if fully incorporated herein.

95.     Defendant has discriminated against Plaintiff because of her sex by subjecting her to unwanted sexual harassment as set forth in more detail above which constitutes a violation of the Title VII of the Civil Rights Act of 1964.

96.     Plaintiff has suffered lost wages, benefits and other pecuniary losses as well as deep humiliation, anxiety and emotional distress.

97.     The unlawful actions of Defendant complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff.

11

## **PRAYER FOR RELIEF**

**WHEREFORE PREMISES CONSIDERED,** Plaintiff respectfully prays that upon

hearing of this matter by a jury, the Plaintiff be granted the following relief in an amount

to be determined by the jury:

1. Back wages;
2. Reinstatement or future wages in lieu of reinstatement;
3. Compensatory damages;
4. Punitive damages;
5. Attorney's fees;
6. Lost benefits;
7. Pre-judgment and post-judgment interest;
8. Costs and expenses; and
9. Such further relief as is deemed just and proper.

THIS the 9th day of January 2024.

Respectfully submitted,

AMNA GRAGG, Plaintiff

By:    /s/Louis H. Watson, Jr.
Louis H. Watson, Jr.  (MB# 9053)
Nick Norris (MB# 101574)
Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
4209 Lakeland Drive # 365
Flowood, MS 39232-9212
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
Email: louis@watsonnorris.com
Web:  www.watsonnorris.com